# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**SEAN MCINTYRE,**

       **Plaintiff,**

                    **Case No. 2:23-cv-679**
**v.**                    **JUDGE EDMUND A. SARGUS, JR.**
                    **Magistrate Judge Chelsey M. Vascura**

**ANDREW LOVE,** *et al.*,

       **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants Deputy Andrew Love ("Deputy Love"), Perry County Sheriff's Office ("Sheriff's Office"), Perry County Prosecutor's Office ("Prosecutor's Office"), and Perry County 9-1-1 Center's ("9-1-1 Center") (together, "Defendants") Motion to Dismiss (ECF No. 9) the Complaint filed by *pro se* Plaintiff Sean McIntyre (ECF No. 2). For the reasons set forth below, the Court **GRANTS** Defendants' Motion to Dismiss.

## I. BACKGROUND

This case arises from an interaction between Plaintiff and Deputy Love. Taken as true, Plaintiff's allegations, in relevant part, are as follows:

During the morning of December 22, 2021, Plaintiff was exercising outside of the "prosecuting attorney office" (the Perry County Prosecutor's Office). (Compl. at 2, ECF No. 2 at PageID # 10.) There were no other persons present at the time Plaintiff was exercising. (*Id.*) At or about the same time Plaintiff was exercising, the Sheriff's Office received a phone call regarding a person in the parking lot where Plaintiff was located. (*Id.* at 3, PageID # 11.) The caller—whom

Plaintiff alleges was the 9-1-1 Center or Prosecutor's Office—identified a man who was "boxing mid air" and "seriously tweaking."  (*Id.*)  Plaintiff describes "tweaking" as a person whose appearance suggests he is under the influence of drugs.  (*Id.*)  At this point, Deputy Love was dispatched to Plaintiff's location.  (*Id.*)  Deputy Love arrived to find Plaintiff, alone, in the location described by the caller.  (*Id.*)  Deputy Love observed Plaintiff jumping around, clenching his hands, darting his eyes from side to side, and unable to stay in one place. (Pl. Resp. at Ex. L15[1], ECF No. 12.)

Plaintiff alleges that Deputy Love did not look for any other persons who may have fit the caller's description, and that Deputy Love did not suspect Plaintiff of committing any crime. (Compl. at 3, ECF No. 2 at PageID # 11.)  However, Plaintiff also alleges that, at some point during this interaction, Deputy Love accused Plaintiff of not obeying the law.  (*Id.* at 4, PageID # 12.) Plaintiff further alleges that Deputy Love did not question Plaintiff about the suspicious activity or Plaintiff's behavior, and that Plaintiff was unaware of the description of the suspect provided to Deputy Love.  (*Id.*)

Deputy Love began questioning Plaintiff, allegedly ordering Plaintiff to identify himself. (*Id.* at 3, PageID # 11.)  Plaintiff refused.  (*Id.*)  Deputy Love then told Plaintiff that Plaintiff was "about to get . . . hemmed up" for refusing to identify himself.  (*Id.*)  Plaintiff told Deputy Love that Plaintiff did not want to provide his last name, and Deputy Love stated that Plaintiff was "required to give ID when requested by an officer."  (*Id.*)  Plaintiff stated that he did not break a law, and Deputy Love responded by saying, "I didn't say you did."  (*Id.*)  Plaintiff alleges that Deputy Love then detained, arrested, and interrogated Plaintiff, accusing him of being the

---

[1] The Court explains below why it will consider this exhibit attached to Plaintiff's Response in Opposition to Defendants' Motion to Dismiss.

2

identified suspect. (*Id.* at 4, PageID # 12.) Deputy Love allegedly ordered Plaintiff to go to Plaintiff's place of work to speak with his boss, which was next to the parking lot that where the incident was occurring. (*Id.*) Plaintiff then identified himself, and Deputy Love "lost interest in detaining" Plaintiff. (*Id.*)

Plaintiff filed his Complaint on January 20, 2023, in the Perry County Court of Common Pleas. (Compl., ECF No. 2.) On February 16, 2023, Defendants removed the case to this Court on the basis of federal question jurisdiction over Plaintiff's constitutional claims with supplemental jurisdiction over Plaintiff's state law claims. (Not. of Removal, ECF No. 1.) Thereafter, Defendants filed their Motion to Dismiss, which Plaintiff opposes. (ECF Nos. 9, 12.) The Motion to Dismiss is fully briefed and ripe for this Court's consideration.

## II. STANDARD OF REVIEW

"Pro se complaints," as is the case here, "are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotations omitted). But this liberal standard has its limit—that is, a plaintiff proceeding *pro se* still must satisfy the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). A court "should not have to guess at the nature of the claim asserted." *Rolle v. Kimbler*, No. 2:20-CV-35, 2020 WL 5016801, at *3 (S.D. Ohio Aug. 25, 2020) (quoting *Frengler v. Gen. Motors*, 482 F. App'x 975, 977 (6th Cir. 2012)).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 697

(2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (clarifying plausibility

standard articulated in *Twombly*).  Further, "[a]lthough for purposes of a motion to dismiss [a

court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as

true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly,* 550 U.S. at

555) (internal quotations omitted).

### III. DISCUSSION

First, the Court addresses Plaintiff's inclusion of facts beyond the Complaint in his

Response in Opposition to the Motion to Dismiss (Plaintiff's "Response").  Second, the Court

considers Plaintiff's claims pursuant to 42 U.S.C. § 1983.  Third, the Court evaluates the

plausibility of Plaintiff's state law claims.

**A.      Facts Outside of the Complaint**

Plaintiff's Response cited a multitude of exhibits not attached to his Complaint and

included several facts that were not specifically alleged within the Complaint.  "[I]n ruling on a

motion to dismiss for failure to state a claim under Rule 12(b)(6), a court generally may not

consider any facts outside the complaint and exhibits attached thereto." *Passa v. City of Columbus*,

123 F. App'x 694, 697 (6th Cir. 2005) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.

2001)).  However, there are certain circumstances where the Court may consider such documents.

Those circumstances are present here.

In addition to a complaint, the Court can consider (1) documents that are referenced in the

complaint and that are central to a plaintiff's claims, (2) matters of which a court may take judicial

notice (3) documents that are a matter of public record, and (4) letters that constitute decisions of

a governmental agency when ruling on a motion to dismiss. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings . . . . [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.").

Although not all of the documents attached to Plaintiff's Response are proper for consideration at the Motion to Dismiss stage, in light of the Sixth Circuit's "liberal view of what matters fall within the pleadings," the Court will consider those documents which are central to Plaintiff's claims, such as Deputy Love's incident statement marked Exhibit L15 in Plaintiff's Response. *Amengau*, 7 F. App'x at 344. [2]

### B. Plaintiff's § 1983 Claims

Plaintiff alleges five claims pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege that a person acting under the color of state law deprived him of a constitutional right. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (a plaintiff must show "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state

---

[2] The Court does not construe Plaintiff's Response, including the citation of facts beyond the pleadings, as an abandonment of claims as Defendants contend. Although Plaintiff does not cite a dearth of case law, Plaintiff repeatedly asserts the validity of his claims in his response in opposition to Defendants' Motion to Dismiss. (*See generally* ECF No. 12.) Accordingly, the Court will assess the merits of Plaintiff's claims.

law"). A plaintiff must "identify the specific constitutional right allegedly infringed" upon by a defendant. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

Additionally, plaintiffs bear the burden of overcoming qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815, 86 L. Ed. 2d 411 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.") Officers are entitled to qualified immunity unless (1) they violated a federal statutory or constitutional right; and (2) that right was clearly established at the time of the incident. *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). Whether a constitutional violation occurred mirrors this Court's analysis of whether a plaintiff has stated a plausible claim pursuant to Fed. R. Civ. P. 12(b)(6). *Id.* at 764 ("After all, asking whether there was a violation of a constitutional right resembles the Rule 12(b)(6) question—has the plaintiff pleaded facts that state a claim for relief in the complaint?"). "A right is clearly established where 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Yerkes v. Ohio State Highway Patrol*, No. 22-3030, 2022 WL 17753528, at *4 (6th Cir. Dec. 19, 2022) (quoting *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 898 (6th Cir. 2019)).

Plaintiff alleges violations of the (a) First Amendment; (b) Fourth Amendment; (c) Eighth Amendment; (d) Thirteenth Amendment; and (e) Fourteenth Amendment to the United States Constitution. Defendants move for dismissal based failure to state a claim pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, and, alternatively, qualified immunity. Plaintiff alleges these

claims against all Defendants. The Court will first consider Plaintiff's claims against the 9-1-1 Center, Sheriff's Office, and Prosecutor's office (the "County Defendants"). Second, the Court will consider Plaintiff's claims against Deputy Love.

### 1. Plaintiff's Claims Against County Defendants

Before analyzing whether Plaintiff has plead facts sufficient to state claims as required by Fed. R. Civ. P. 12(b)(6), the Court addresses whether the 9-1-1 Center, Sheriff's Office, and Prosecutor's Office are entities capable of being sued. Sixth Circuit law establishes that they are not. *See, e.g.*, *Lloyd v. City of Streetsboro*, No. 18-3485, 2018 WL 11298664, at *3 (6th Cir. Dec. 20, 2018); *Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014). In *Lloyd*, the Sixth Circuit reiterated that, under Ohio law, sheriff's offices and county prosecutor's offices are not entities capable of being sued under § 1983. *Lloyd*, 2018 WL 11298664, at *3. County sheriff's offices, county prosecutor's offices, and county emergency services departments are mere sub-units of local governments that cannot be sued because they are not *sui juris*. *See Bey v. Elmwood Place Police Dep't*, No. 1:16CV823, 2017 WL 3821456, at *4 (S.D. Ohio Sept. 1, 2017), aff'd, No. 17-3945, 2018 WL 4354541 (6th Cir. May 18, 2018); *Brown v. Lorain Cnty. Prosecutor's Off.*, No. 1:20CV691, 2020 WL 4475345, at *2 (N.D. Ohio Aug. 4, 2020) (finding that the Lorain County Prosecutor's Office is not an entity subject to suit under § 1983); *Lathan v. City of Cleveland*, No. 1:12 CV 37, 2012 WL 1708762, at *2 (N.D. Ohio May 15, 2012) (finding that municipal fire departments and divisions of emergency medical services are not entities subject to suit under § 1983). Accordingly, the Court dismisses Plaintiff's claims against the Sheriff's Office, Prosecutor's Office, and 9-1-1 Center.

Even to the extent Plaintiff's claims against the County Defendants is construed as a claim against Perry County itself or the Sheriff as an employer, Plaintiff's claims must fail. A municipal

defendant like Perry County or the Sheriff may be held liable under § 1983 "only where the municipality's policy or custom led to the violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978)). Here, the Complaint does not identify any policy or custom responsible for an alleged constitutional violation. (*See generally* Compl., ECF No. 2.) Indeed, Plaintiff alleges that Deputy Love's actions went *against* policy. (*Id.* at 3, PageID # 11.) Accordingly, the Complaint does not state facts sufficient to allege a *Monell* claim, and the Court dismisses Plaintiff's claims against the County Defendants on this basis as well.

**2. Plaintiff's § 1983 Claims Against Deputy Love**

The Court considers each of Plaintiff's five counts against alleging § 1983 liability for violations of the (a) First Amendment; (b) Fourth Amendment; (c) Eighth Amendment; (d) Thirteenth Amendment; and (e) Fourteenth Amendment.

**a. Plaintiff's First Amendment Claim under § 1983**

Plaintiff fails to state a plausible violation of his First Amendment rights. The Court construes Plaintiff's claim as a First Amendment retaliation claim. "To establish a First Amendment retaliation claim, the plaintiff must prove that: 1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Plaintiff alleges that Deputy Love infringed upon his "right to freely record" the interaction at issue. (Compl. at 6, ECF No. 2 at PageID # 14.) Beyond this conclusory allegation that Deputy

8

Love infringed upon his right to record, the Complaint does not identify any facts relating to this alleged infringement.  (*See generally id.*)  The Complaint does not identify whether or how Plaintiff attempted to record the interaction, or how Deputy Love prevented Plaintiff from recording the interaction.  Indeed, Plaintiff does not mention a cell phone or attempted recording until the very end of Count III.  Accordingly, Plaintiff fails to provide facts sufficient to state a claim as required by Fed. R. Civ. P. 12(b)(6).  The Court dismisses Plaintiff's Count III.

### b.    Plaintiff's Fourth Amendment Claim under § 1983

Plaintiff's rests his § 1983 claim for alleged violations of the Fourth Amendment upon two theories.  He alleges that he was both unlawfully detained and unlawfully arrested.  (Compl. at 4, ECF No. 2 at PageID # 12.)  Because different constitutional standards apply to brief detentions and arrests, the Court analyzes these two bases for Plaintiff's claims separately.

Deputy Love contends that no detention or arrest occurred, and that any detention or arrest was supported by reasonable suspicion and probable cause.  Finally, Deputy Love raises the defense of qualified immunity.  The Court considers (i) whether a detention occurred in violation of the Fourth Amendment; (ii) whether an arrest occurred in violation of the Fourth Amendment; and (iii) whether Deputy Love is entitled to qualified immunity.  The Court finds that Plaintiff plausibly alleges that Deputy Love both detained and arrested Plaintiff, but Plaintiff fails to plausibly allege that either action violated the Fourth Amendment.  Further, the Court finds that any alleged liability would be barred by qualified immunity.

### i.    Whether Plaintiff was Detained in Violation of the Fourth Amendment

Plaintiff alleges that Deputy Love violated the Fourth Amendment by "detaining" him. Defendants argue that no detention occurred.  (Def. Mot. at 9, ECF No. 9 at PageID # 42.)  Viewing

the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has plausibly alleged that he was detained.

The Fourth Amendment to the United States Constitution prohibits unreasonable seizures. U.S. CONST. Amend. IV; *United States v. Mendenhall*, 446 U.S. 544, 551, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). "[A] seizure occurs if 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Campbell v. Cheatham Cnty. Sheriff's Dep't*, 47 F.4th 468, 476–77 (6th Cir. 2022) (quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007)); *Mendenhall*, 446 U.S. at 551. In *Mendenhall*, the Supreme Court held that "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *Mendenhall*, 446 U.S. at 553.

Here, taking Plaintiff's factual allegations as true, Plaintiff's freedom of movement was likely restrained when Deputy Love told Plaintiff that he was going to get "hemmed up," which is a slang term for being arrested. *See id.* at 554 ("Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be . . . the use of language or tone of voice indicating that compliance with the officer's request might be compelled."). Given Deputy Love's alleged warning that Plaintiff would be arrested for failing to provide identification, a reasonable person would have understood that he was not free to leave in these circumstances. *See Campbell*, 47 F.4th at 477. Accordingly, the Court finds Plaintiff plausibly alleges that Deputy Love detained Plaintiff at this moment.

The Court now turns its attention to whether Plaintiff has sufficiently alleged that Deputy Love's detention was unreasonable. A seizure is unreasonable if it is not based on an officer's objective justification. *Mendenhall*, 446 U.S. at 551 ("The Fourth Amendment's requirement that searches and seizures be founded upon an objective justification, governs all seizures of the person,

"including seizures that involve only a brief detention short of traditional arrest."). To detain Plaintiff, Deputy Love must have had reasonable suspicion to conduct an investigatory stop. "When an officer has 'reasonable suspicion' that criminal activity may be afoot, the officer may conduct a limited seizure and briefly detain a person for investigative purposes." *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008) (quoting *Terry v. Ohio*, 392 U.S. 1, 30–31, (1968)). These brief detentions are known as "*Terry* stops." *Smoak v. Hall*, 460 F.3d 768, 778–79 (6th Cir. 2006).

Whether an officer has reasonable suspicion is based on the totality of the circumstances. *Dorsey*, 517 F.3d at 395. Critically, the officer's reasonable suspicion may arise from indirect observations, and "it can be derived from such sources as informant tips, dispatch information, and directions from other officers." *Id.* (citing *Smoak*, 460 F.3d at 777). Reasonable suspicion requires "more than a mere hunch" and must be based on specific and articulable facts, but it is a lower threshold than probable cause. *Smoak*, 460 F.3d at 777. Moreover, the officer's reasonable suspicion may be based on a reasonable mistake of fact. *Heien v. North Carolina*, 574 U.S. 54, 61 (2014). For a dispatch call to form the basis of an investigatory stop, it must, itself, be based on specific and articulable facts. *United States v. Hensley*, 469 U.S. 221, 231–32 (1985). When an officer conducts an investigatory stop, he may question the identify of the suspect. *Dorsey*, 517 F.3d at 395 (citing *Hensley*, 469 U.S. at 232). Signs of "innocent travel" such as shaky hands or sweating may still form the basis of reasonable suspicion under the totality of circumstances. *Compare United States v. Samuels*, 443 F. App'x 156, 160–61 (6th Cir. 2011) (finding reasonable suspicion where the suspect appeared nervous), *with United States v. Johnson*, 482 F. App'x 137, 145 (6th Cir. 2012) (finding no reasonable suspicion where the suspect appeared nervous, while acknowledging the determination was a "close question").

The Court finds that, under the totality of the circumstances, Plaintiff has failed to plausibly allege that Deputy Love lacked reasonable suspicion to conduct an investigatory stop. Deputy Love's claim for reasonable suspicion rests, in part, on the dispatch's reasonable suspicion that someone had committed a crime. Namely, a person who appeared to be intoxicated in a public place in violation of Ohio's Disorderly Conduct statute—Ohio Rev. Code § 2917.11(B). Here, Deputy Love received a call identifying someone suspected of being on drugs outside of the Prosecutor's Office, who appeared to be "tweaking." (Compl. at 3, ECF No. 2.) When Deputy Love arrived to the location provided, Plaintiff was the only person present. (*Id.* at 2.) Deputy Love then witnessed several possible indicators of drug usage—hands clenching, darting eyes, "jumping around," and an inability to remain still—that corroborated the information provided to him by the Prosecutor's Office. (Pl. Resp. at Ex. L15, ECF No. 12.) Notably, Plaintiff's activities were consistent with the Prosecutor's Office's description. (*Compare* Compl. at 3, ECF No. 2 at Page ID # 11, *with* Pl. Resp. at Ex. L15, ECF No. 12.) While Plaintiff's appearance may also support his claim that he was exercising and not under the influence of drugs, the Supreme Court has held that such reasonable mistakes of fact may still form the basis of reasonable suspicion. *See Heien*, 574 U.S. at 61; *United States v. Stevenson*, 43 F.4th 641, 645 (6th Cir. 2022) (describing the ability to base reasonable suspicion for a traffic stop on mistakes of fact as a "well-established rule"). Accordingly, Deputy Love had authority to conduct an investigatory stop.

The Court dismisses Count IV because Plaintiff failed to state a plausible claim that Deputy Love detained Plaintiff in violation of the Fourth Amendment.

### ii. Whether Plaintiff was Arrested in Violation of the Fourth Amendment

Because Plaintiff also alleges that Deputy Love's conduct amounted to an arrest, the Court considers whether Deputy Love's brief detainment was effectuated in a manner that became an

arrest.  Deputy Love characterizes Plaintiff's allegation that he was arrested as conclusory.  (Def. Mot. at 10, ECF No. 12 at PageID # 43.)  The Court disagrees.

The Court finds that the Complaint plausibly alleges Plaintiff was arrested.  "When police actions go beyond checking out the suspicious circumstances that led to the original stop, the detention becomes an arrest that must be supported by probable cause."  *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 873–74 (6th Cir. 2012) (quoting *United States v. Obasa*, 15 F.3d 603, 607 (6th Cir. 1994)).  In *Sutton*, the Sixth Circuit found an investigatory stop turned into an arrest when officers told the plaintiff he was a suspect, took his property, and was escorted away from the location of the initial stop.  *Id.* at 875.  Further, the officer told the plaintiff that the plaintiff "could not go anywhere or do anything."  *Id.*  Here, Plaintiff alleges that Deputy Love told Plaintiff he was "about to get hemmed up," Plaintiff was "required to give ID when requested by an officer," and that Plaintiff was required to give such identification before being free to go.  (Compl. at 3–4, ECF No. 2 at PageID # 11–12.)  Finally, Plaintiff alleges that Deputy Love twice ordered Plaintiff to go to Plaintiff's place of work.  (*Id.* at 3, PageID # 11.)  Like the plaintiff in *Sutton*, Plaintiff was escorted away from the location of the initial detention, and he was not permitted to leave without identifying himself.  These facts plausibly allege an arrest.

However, Plaintiff fails to plausibly allege that Deputy Love lacked probable cause to arrest Plaintiff.  "Probable cause exists where the 'facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person . . . in believing . . . that the suspect committed, is committing, or is about to commit an offense.'"  *Smith v. City of Wyoming*, 821 F.3d 697, 715 (6th Cir. 2016), as amended (May 18, 2016) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).  Moreover, probable cause is a "practical and common-sensical standard."  *Id.* (quoting *Fla. v. Harris*, 568 U.S. 237, 244 (2013)).

13

Here, Plaintiff fails to plausibly allege Deputy Love lacked reasonable suspicion to conduct an investigatory stop and request Plaintiff's identification. Ohio Rev. Code § 2921.29(A) requires someone to provide their identification to an officer when an officer ***reasonably suspects*** the person is committing, or has committed, a crime. Ohio Rev. Code § 2921.29(A)(1) (emphasis added). Because Deputy Love reasonably suspected that Plaintiff was engaging in disorderly conduct in violation of Ohio Rev. Code § 2917.11(B), it follows that Plaintiff was in violation of Ohio Rev. Code § 2921.29(A) when Plaintiff refused to provide identification. At this point, Plaintiff was committing a misdemeanor in the presence of Deputy Love, and therefore Deputy Love had probable cause to arrest Plaintiff. *See United States v. Jones*, 55 F.4th 496, 500 (6th Cir. 2022).

Accordingly, the Court finds Plaintiff has not alleged a claim upon which relief can be granted for being arrested in violation of the Fourth Amendment. The Court dismisses Count IV.

### iii. Whether Deputy Love is Entitled to Qualified Immunity

Even assuming that Deputy Love detained Plaintiff without reasonable suspicion or arrested Plaintiff without probable cause, Plaintiff must overcome qualified immunity to sustain a plausible § 1983 claim. The Court finds that Plaintiff cannot overcome Defendant's qualified immunity defense.

To defeat qualified immunity, Plaintiff must plausibly allege that "(1) that the defendant violated a statutory or constitutional right and (2) that said right was clearly established at the time of the alleged violation." *Yerkes*, 2022 WL 17753528, at *4 (citing *Watson v. Pearson*, 928 F.3d 507, 510 (6th Cir. 2019)). The right is clearly established if it would be clear to a reasonable officer that his conduct was unlawful. *Cahoo*, 912 F.3d at 898. The Court must frame the right in question with a high degree of specificity. *Yerkes*, 2022 WL 17753528, at *5. Further, "a court

14

should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful." *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 214 (6th Cir. 2011). Here, Plaintiff fails to overcome both aspects of qualified immunity.

First, for the reasons already stated, Plaintiff does not state facts sufficient to allege a constitutional violation.

Second, even assuming Deputy Love violated Plaintiff's constitutional rights, Plaintiff cannot demonstrate that his right to refuse to provide identification during an investigatory stop was "clearly established." The Sixth Circuit precedent *Risbridger v. Connelly* forecloses Plaintiff's arguments regarding whether his right to refuse identification was clearly established. In *Risbridger*, the Sixth Circuit held that there was no clearly established right to refuse to provide identification during a valid *Terry* stop. *Risbridger*, 275 F.3d at 572 (emphasis added). Because the Court finds that Deputy Love conducted a valid *Terry* stop, the Court agrees with Defendants. Thus, "viewing the situation from the perspective of a reasonable officer in [Deputy Love's] shoes and applying due deference to the exercise of law enforcement discretion," Deputy Love's actions did not amount to violation of a clearly established right. *Dorsey*, 517 F.3d at 401. Accordingly, Deputy Love is entitled to qualified immunity.

For these reasons, the Court dismisses Plaintiff's Count IV.

### c.    Plaintiff's Eighth Amendment Claim under § 1983

Plaintiff fails to state a plausible violation of his Eighth Amendment rights. "[T]he Eighth Amendment applies only to those individuals who have been tried, convicted, and sentenced." *Richko v. Wayne Cnty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979)). Accordingly, Plaintiff must have been tried, convicted, or sentenced to

state a plausible Eighth Amendment violation. *See Lloyd v. City of Streetsboro*, No. 18-3485, 2018 WL 11298664, at *5 (6th Cir. Dec. 20, 2018) (affirming dismissal of an Eighth Amendment claim under § 1983 because the Plaintiff was not a prisoner). Because Plaintiff does not allege that he was tried, convicted, or sentenced, he fails to state a claim upon which relief may be granted.

Furthermore, Plaintiff vaguely alleges that Deputy Love subjected him to "unusual requirements" and "force," and that Plaintiff "suffered consequences" for not providing his identification. (Compl. at 8, ECF No. 2 at PageID # 16.) Plaintiff does not identify what these unusual requirements or consequences were, nor does he identify the unlawful force used by Deputy Love. (*See id.*) These vague and conclusory allegations are insufficient to state a specific constitutional violation capable of surviving a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

For these reasons, the Court dismisses Count VII.

### d. Plaintiff's Thirteenth Amendment Claim under § 1983

Though Count VIII is labeled a § 1983 claim for violation of the Thirteenth Amendment, Plaintiff identifies multiple other Constitutional Amendments as bases for liability. He alleges that Deputy Love required him to involuntarily relinquish his Fourth, Fifth, Ninth, and Fourteenth Amendment rights under the United States Constitution. (Compl. at 8, ECF No. 2 at PageID # 16.)[3] Beyond identifying relinquishment of those rights, Plaintiff merely alleges that he suffered unusual distress as a result of his alleged detainment. (*Id.*) Crucially, the Complaint does not

---

[3] Because Plaintiff alleges § 1983 claims for violations of the Fourth and Fourteenth Amendment in separate Counts, the Court addresses those claims separately. The Court finds Plaintiff fails to state a plausible claim for violation of the Fourth Amendment for the reasons already stated in Section B(2)(b) of this Opinion and Order. The Court addresses Plaintiff's Fourteenth Amendment in Section B(2)(e), finding that he fails to state a plausible claim for violation of the Fourteenth Amendment.

allege any facts that would show *how* Defendants violated each of Plaintiff's rights under these amendments. Because Plaintiff frames Count VIII as a claim for violation of the Thirteenth Amendment, the Court addresses his Thirteenth Amendment claim prior to addressing the other constitutional amendments identified in Count VIII.

Plaintiff fails to state a claim for violation of the Thirteenth Amendment. The Thirteenth Amendment prohibits slavery and involuntary servitude. U.S. CONST. Amend. XIII, § 1. "[O]nly situations involving the compulsion of services 'by the use or threatened use of physical restraint or injury, or by the use of threat of coercion through law or the legal process' constitute 'involuntary servitude' prohibited by . . . the Thirteenth Amendment." *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1357 (6th Cir. 1996) (quoting *United States v. Kozminski*, 487 U.S. 931, 932 (1988)). Involuntary servitude and compulsion of services is coerced or forced labor— not merely providing one's name to law enforcement. *See Rowe v. City of Elyria*, 38 F. App'x 277, 283 (6th Cir. 2002) (requiring a plaintiff to mow their lawn pursuant to a municipal ordinance did not constitute involuntary servitude or compulsion of services). Plaintiff fails to identify how Deputy Love's request for identification constitutes involuntary servitude. Accordingly, the Court dismisses Count VIII as it relates to the Thirteenth Amendment.

Plaintiff fails to state a claim for violation of the Fifth Amendment. "[T]he Due Process Clause of the Fifth Amendment only applies to actions taken by the federal government." *Johnson v. City of Kentwood*, No. 20-1568, 2021 U.S. App. LEXIS 7518, at *10 (6th Cir. Mar. 15, 2021) (citing *Barron v. Baltimore*, 32 U.S. 243, 250 (1833)). Because Defendants are state government employees or entities, and not affiliated with the federal government, Plaintiff cannot state a plausible Fifth Amendment claim. The Court dismisses Count VIII as it relates to the Fifth Amendment.

Plaintiff fails to state a claim for violation of the Ninth Amendment.  The Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law."  *Lloyd v. City of Streetsboro*, No. 18-3485, 2018 WL 11298664, at *5 (6th Cir. Dec. 20, 2018) (quoting *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991)).  Accordingly, the Court dismisses Count VIII as it relates to the Ninth Amendment.

For these reasons, the Court grants Defendants' motion to dismiss Count VIII.

### e.    Plaintiff's Fourteenth Amendment Claim under § 1983

Plaintiff fails to state a Fourteenth Amendment claim.  Plaintiff's Fourteenth Amendment claim merely alleges that Deputy Love "abridge[d] [his] privileges and or immunities."  (Compl. at 8–9, ECF No. 2 at PageID # 16–17.)  To state a claim for violation of the privileges and immunities clause of the Fourteenth Amendment, a plaintiff must identify "some racial or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  Here, Plaintiff does not identify such class-based discriminatory animus, nor does he identify the privileges or immunities he was deprived of. Accordingly, the Court dismisses Count IX for failure to state a claim.

### C.    Plaintiff's State Law Claims

In addition to his § 1983 claims, Plaintiff alleges multiple claims based in state law: (a) common law tort claims for false imprisonment and intentional infliction of emotional distress; (b) discrimination in violation of Ohio Revised Code § 4112.02(G); (c) conspiracy; and (d) punitive damages.

### a.    Common Law Tort Claims for False Imprisonment and Intentional Infliction of Emotional Distress

In Counts I and II, Plaintiff alleges the common law torts of false imprisonment and intentional infliction of emotional distress against Deputy Love.  Additionally, in Count XI, Plaintiff alleges "emotional and physical distress."  Defendants argue that these claims fail because Deputy Love is entitled to immunity.  The Court agrees with Defendants, finding that Deputy Love is immune from Plaintiff's intentional tort claims against him in either his personal or official capacity.

Ohio Revised Code §§ 2744.01–03 provides immunity to employees of Ohio political subdivisions where the act at issue was done in connection with a governmental function, including the provision of police services.  To overcome that immunity, "the alleged action or inaction must be committed 'with malicious purpose, in bad faith, or in a wanton or reckless manner.'"  *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013) (citing Ohio Rev. Code § 2744.03(A)(6)(b)).  Here, all of Deputy Love's alleged actions were taken in connection with his governmental function, and the Complaint does not allege facts demonstrating any plausible basis for finding that the alleged actions were taking with malicious purpose, in bad faith, or in a wanton or reckless manner.  Accordingly, Deputy Love is entitled to immunity on Plaintiff's intentional tort claims.

The Court dismisses Counts I, II, and XI.

### b.    Discrimination in Violation of Ohio Revised Code § 4112.02(G)

Plaintiff alleges that he was discriminated against in violation of Ohio Revised Code § 4112.02(G).  O.R.C. § 4112.02(G) states that the following constitutes discriminatory conduct:

> For any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, military status, national origin, disability, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

19

Plaintiff alleges he was discriminated against based on his race. (Compl. at 7, ECF No. 2 at PageID # 15.) To state a claim for violation of O.R.C. § 4112.02(G), a plaintiff must allege facts sufficient to show that ". . . the proprietor, keeper, manager or employee of a place of public accommodation has denied to any person the full enjoyment of such place" due to his race. *Ohio Civil Rights Comm. v. Lysyj*, 38 Ohio St.2d 217, 219 (1974).

Here, the Complaint does not state facts sufficient to demonstrate Plaintiff was discriminated against due to his race, or that he was denied the full enjoyment of a place of public accommodation. Rather, the Complaint makes clear that Deputy Love's actions were taken as a result of Plaintiff's suspected drug use and refusal to provide identification—not his race. Accordingly, the Court dismisses Count V.

### c.      Conspiracy

In Count VI, Plaintiff alleges Defendants are liable for conspiracy. Plaintiff's conspiracy claim fails to allege specific facts sufficient to state a claim, and it is barred by the intracorporate conspiracy doctrine. "Claims of conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). Here, the Complaint merely states that Defendants "worked together" to violate his rights, falsely imprison him, and inflict emotional distress upon him. (Compl. at 7, ECF No. 2 at PageID # 15.) This vague and conclusory allegation does not meet the specificity requirements of conspiracy claims.

Moreover, Count VI is barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that if "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Jackson v. City of*

*Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019) (quoting *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (6th Cir. 1994)).  Here, Plaintiff alleges Deputy Love, the 9-1-1 Center, Sheriff's Office, and Prosecutor's Office all conspired against him.  However, each Defendant is an employee or office of Perry County.  Accordingly, the intracorporate conspiracy doctrine bars Plaintiff's claim.  Therefore, the Court dismisses Count VI.

### d.    Punitive Damages

Plaintiff's claim for punitive damages is dismissed.  Punitive damages are a remedy, not a separate cause of action.  *Calvey v. Stifel, Nicolaus & Co., Inc.*, 850 F. App'x 344, 350 (6th Cir. 2021).  Because the Court dismisses all of Plaintiff's Claims, Plaintiff is not entitled to punitive damages.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants' Motion to Dismiss.  The Clerk is **DIRECTED** to enter judgment in favor of Defendants and close this case.


**IT IS SO ORDERED.**


**9/13/2023**                                    **s/Edmund A. Sargus, Jr.**
**DATE**                                          **EDMUND A. SARGUS, JR.**
                                                           **UNITED STATES DISTRICT JUDGE**